# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIE BASSILL,<br><br>*Plaintiff,*<br><br>v.<br><br>MAIN LINE HOSPITALS, INC. d/b/a<br>BRYN MAWR REHABILITATION<br>HOSPITAL,<br><br>*Defendant.* | CIVIL ACTION<br>NO. 16-01575 |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　January 11, 2018

## MEMORANDUM

Marie Bassill sued Bryn Mawr Rehabilitation Hospital ("Bryn Mawr") claiming that a physical therapist injured her while manipulating her head and neck during a vestibular reevaluation at Bryn Mawr. (Compl. ¶¶ 13–14.) In Count I of her Complaint, filed on April 5, 2016, Bassill sought to hold Bryn Mawr vicariously liable for the alleged professional negligence of its employee and/or agent, a woman identified in the Complaint as "Kerry." *See* (Compl. ¶¶ 23–30.) In Count II, Bassill sought to hold Bryn Mawr directly liable for its own corporate negligence. (Compl. ¶¶ 31–40.) The Court dismissed that count, with prejudice, on October 26, 2016. (ECF Nos. 16, 17.) An arbitration hearing was held on June 13, 2017 (ECF No. 35), following which Bassill demanded a trial *de novo* (ECF No. 39). Bryn Mawr subsequently filed a Motion for Summary Judgment. (Defs Mot. for Summ. J., ECF No. 41.) Bassill never responded to the Motion, which the Court now grants because there is no evidence in the record to

1

show that Bryn Mawr or its employee breached a professional standard of care or that Bassill's alleged injuries were caused by the vestibular reevaluation.

I

A

The record evidence consists only of Bassill's deposition testimony (Def. Mot. for Summ. J., Ex. G ("Bassill Dep.")), her relevant medical records (*Id.*, Exs. E, F, H–O) and a declaration by Curry Durborow, the physical therapist who performed the procedure at issue in this case (*Id.*, Ex. C ("Durborow Sworn Declaration")).[1] Bassill has a lengthy medical history which predates the vestibular reevaluation. Since 2002, she has suffered from migraines. (Def. Mot. for Summ. J., Exs. E, F.) Between 2002 and 2011, Bassill was involved in at least four car accidents which caused several injuries resulting in, among other things, head and/or neck pain. (*Id.*, Exs. F, H, I.) In 2004, she was hit in the face with a kickball. (Bassill Dep. at 168:19–21.) On October 10, 2011, Bassill was hit in the head by a basketball while working as a teacher's aide and suffered a concussion and in March 2014, she was still complaining of symptoms from that concussion. (*Id.* 167:15–22; Def. Mot. for Summ. J., Ex. K.) Specifically, Bassill was sensitive to light and sound, suffered from headaches, depression and had difficulty concentrating. (*Id.*) She sought treatment from a neurologist, Dr. David Long, who ordered the vestibular therapy. (*Id.*) As part of the procedure, Ms. Durborow performed a Gaze Stabilization Test ("GST") on Bassill on April 8, 2014. (*Id.*)

Therapists use a GST to evaluate patients with potential deficits in their vestibular system—often patients with post-concussion symptoms. (Durborow Sworn Declaration, at ¶ 4.) During a GST, a physical therapist moves the patient's head from

---

[1] Ms. Durborow is the "Kerry" referred to in the Complaint. (Def. Mot. for Summ. J., ¶ 17.)

side-to-side while the patient views the letter "E" in different orientations on a computer screen; the test seeks to measure how quickly the patient can move her head while identifying the correct orientation of the letter. (*Id.* at ¶¶ 6, 7.) A computer program dictates how quickly the therapist should move the patient's head and how many trials should be performed. (*Id.* at ¶ 9.) Bassill testified that she was forced to repeat the test "again and again and again" until she "couldn't take it anymore", at which point Durborow ended the evaluation. (Bassill Dep., at 101:10–103:15.)

On April 14, 2014, Bassill went to the Paoli Hospital Emergency Department and was diagnosed with a headache. (Def. Mot. for Summ. J., Ex. L.) On April 17, 2014, she was again diagnosed with a headache at Crozer Chester Medical Center Emergency Department. (*Id.*, Ex. M.) She was subsequently diagnosed with a headache and post-concussion syndrome at Thomas Jefferson University Hospital Emergency Department on April 20, 2014. (*Id.*, Ex. N.)

B

On May 9, 2017, Bryn Mawr requested that Bassill produce a copy of the expert report(s) she intended to introduce at the June 13 arbitration. (*Id.*, Ex. B.) On June 12, Bassill's attorney notified Bryn Mawr that he did not intend to present any evidence or testimony from an expert. (Def. Mot. for Summ. J., at 2.) Subsequent to Bassill's demand for a trial *de novo* (ECF No. 39), her attorney filed a Petition to Withdraw from the case (ECF No. 38) and Bryn Mawr filed its Summary Judgment Motion (ECF No. 41). The Court held a hearing on the Petition on August 4, 2017. (ECF No. 44.) During the *ex parte* portion of that hearing, Bassill's counsel explained, in front of his client, why he could no longer represent her. After a thorough discussion, the Court indicated

that it would grant the Petition and allow counsel to withdraw from the case. (Hr'g Tr. 7:1–18:23, Aug. 4, 2017, Sealed Portion, ECF No. 47.) The Court told Bassill that she would be given sixty days to find another attorney and that if another lawyer agreed to represent her, counsel would be allowed another period of time to respond to Bryn Mawr's Motion. (*Id.* at 19:24–20:5.) The Court further explained that if Bassill was unable to find another lawyer, she would need to respond to the motion herself. (*Id.* at 20:12–17.)

After the hearing, the Court entered an Order allowing Bassill's counsel to withdraw and gave her until October 4, 2017 to obtain new counsel. (ECF No. 45.) The Order provided that in the event Bassill obtained a new lawyer, the Court would determine a schedule for new counsel to respond to the Motion. (*Id.*) The Order also required Bassill to respond to the Motion by November 20, 2017 if she did not secure new counsel. (*Id.*) No lawyer entered an appearance and to date Bassill has not responded.

II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice;

there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252.

Summary judgment is appropriate where "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Benckini v. Hawk*, 654 F. Supp. 2d 310, 315 (E.D. Pa. 2009) (citations omitted).

If the non-moving party does not respond to a motion for summary judgment, it does not automatically result in the entry of judgment for the movant. *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The court may give the non-moving party another opportunity to address the asserted facts or consider the facts undisputed and may only grant summary judgment if the motion— including the undisputed facts—shows that the movant is entitled to judgment as a matter of law. *Id*; Fed. R. Civ. P. 56(e). Although the court will liberally construe a *pro se* plaintiff's complaint, the plaintiff "still has before [her] the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [her].'" *Benckini*, 654 F. Supp. 2d at 316 n.1 (citing *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (citation omitted)).

III

Bassill asserts a claim of professional negligence against Bryn Mawr, based on the GST administered by Ms. Durborow. Under Pennsylvania law, physical therapists are among those against whom a professional negligence claim may be brought. *See* Pa.R.C.P. 1042.1. To prove either ordinary negligence or professional negligence, a plaintiff must establish that a defendant owed a duty of care to the plaintiff, the defendant breached the duty, the breach resulted in the plaintiff's injury and the plaintiff suffered an actual loss or damages. *Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009). In a professional negligence suit, the plaintiff must prove that the defendant breached a professional standard of care, rather than the standard of care that would be owed by a non-professional. *Id.* at 507.

Similar to a medical malpractice case, experts are required in professional negligence cases to establish the standard of care, causation and to clarify complex issues for laypersons. *Merlini,* 980 A.2d at 506; *see also Toogood v. Owen J. Rogal*, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003); *Hakeem v. Salaam,* 260 F. App'x 432, 434 (3d Cir. 2008). Expert testimony is not required if the matter is "so simple or the lack of care is so obvious" and "within the range of experience and comprehension of non-professional persons." *Hakeem*, 260 F. App'x at 434.

Bryn Mawr argues that Bassill cannot prove the elements of her claim without expert testimony because laypersons are unfamiliar with the GST, the performance of which is "beyond the common knowledge of non-professionals." (Def. Mot. for Summ. J. at 10.) There is no record evidence establishing the professional standard of care allegedly breached by Ms. Durborow when she administered the GST to Bassill and

Bassill has not shown that the standard of care is "so simple or the lack of care is so obvious." *Hakeem*, 260 F. App'x at 434. Even if it were, Bassill must still show causation. While she alleges that the physical therapist's negligence caused stroke-like episodes, worsened cognitive function, "thundering headaches" and light and sound sensitivity (Bassill Dep. at 128:1–21), nothing in the record establishes that any of these symptoms are attributable to the reevaluation and the GST as opposed to her numerous prior injuries and preexisting ailments (*see supra* Section I(A)). Additionally, Bassill acknowledged that airplane travel has in the past caused her symptoms to worsen and that one week before the GST, Bassill flew from Hawaii to Florida and then from Florida to Pennsylvania. (Bassill Dep. at 90:23–92:11, 100:24–101:9.) The flights caused her to feel "destabilized" and all of her symptoms were "aggravated" and "disturbed." (*Id.* at 100:9–21.) On the day of the GST, she was still feeling the effects of her recent flights. (*Id.*) The causation issue is not "within the range of experience and comprehension of non-professional persons" and without the requisite expert testimony, a trial would be pointless and unnecessary. *Hakeem*, 260 F. App'x at 434.

    An appropriate Order follows.

                                                BY THE COURT:

                                                ***/s/ Gerald J. Pappert***
                                                GERALD J. PAPPERT, J.